# EXHIBIT A

# RESIDENTIAL RENTAL CONTRACT

RESIDENT: 620 Corrisher Gravel Road, China Grove NC 28023 ("Tenant")

OWNER: Cynthia Neely English - Alpha Grup Investments LLC ("Landlord")

REAL ESTATE MANAGEMENT FIRM: NA ("Agent")

PREMISES: City: China Grove  County: Rowan  State of North Carolina
☐ Street Address: _____
☐ Apartment Complex: _____  Apartment No. _____
☐ Other Description (Room, portion of above address, etc.): _____

INITIAL TERM: Beginning Date of Lease: 12/1/19  Ending Date of Lease: 12/31/20

RENT: $ 900.00  PAYMENT PERIOD: ☒ monthly ☐ weekly ☐ yearly ☐ other: _____

LATE PAYMENT FEE: $ 50.00  OR  6%  % of rental payment, whichever is greater
*(State law provides that the late fee may not exceed $15.00 or five percent (5%) of the rental payment, whichever is greater.)*

SECURITY DEPOSIT: $ 1,000.00  to be deposited with: (check one) ☒ Landlord ☐ Agent
LOCATION OF DEPOSIT: (insert name of bank): NA
BANK ADDRESS: NA

RETURNED CHECK FEE: $ 25.00  *(The maximum processing fee allowed under State law is $25.00.)*
SUMMARY EJECTMENT ADMINISTRATIVE FEE (see paragraph 17): $ 85.00 +

PETS: ☒ PETS NOT ALLOWED ☐ PETS ALLOWED  NONREFUNDABLE PET FEE (if pets allowed): $ ___
TYPE OF PET PERMITTED (if pets allowed): No pets in or outside

PERMITTED OCCUPANTS (in addition to Tenant): 1 Child - daughter

IN CONSIDERATION of the promises contained in this Agreement, Landlord, by and through Agent, hereby agrees to lease the Premises to Tenant on the following terms and conditions:

1. **Termination and Renewal:** Either Landlord or Tenant may terminate the tenancy at the expiration of the Initial Term by giving written notice to the other at least ___60___ days prior to the expiration date of the Initial Term. In the event such written notice is not given or if the Tenant holds over beyond the Initial Term, the tenancy shall automatically become a ___month___ (period) to ___month___ (period) tenancy upon the same terms and conditions contained herein and may thereafter be terminated by either Landlord or Tenant giving the other ___30___ days written notice prior to the last day of the then current period of the tenancy.

2. **Rent:** Tenant shall pay the Rent, without notice, demand or deduction, to Landlord or as Landlord directs. The first Rent payment, which shall be prorated if the Initial Term commences on a day other than the first day of the Payment Period, shall be due on ___Dec 1, 2019___ (date). Thereafter, all rentals shall be paid in advance on or before the FIRST day of each subsequent Payment Period for the duration of the tenancy.

3. **Late Payment Fees and Returned Check Fees:** Tenant shall pay the Late Payment Fee if any rental payment is not received by midnight on the fifth (5th) day after it is due. *This late payment fee shall be due immediately without demand therefor and shall be added to and paid with the late rental payment. Tenant also agrees to pay the Returned Check Fee for each check of Tenant that is returned by the financial institution because of insufficient funds or because the Tenant did not have an account at the financial institution.*

1 of 6


North Carolina Association of REALTORS® Inc.
Tenant Initials ___



STANDARD FORM 410-T
© 7/2004

This form produced by: Instanet Formulator® 800-336-1027

**4. Tenant Security Deposit:** The Security Deposit shall be administered in accordance with the North Carolina Tenant Security Deposit Act (N.C.G.S. § 42-50 et. seq.). IT MAY, IN THE DISCRETION OF EITHER THE LANDLORD OR THE AGENT, BE DEPOSITED IN AN INTEREST-BEARING ACCOUNT WITH THE BANK OR SAVINGS INSTITUTION NAMED ABOVE. ANY INTEREST EARNED UPON THE TENANT SECURITY DEPOSIT SHALL ACCRUE FOR THE BENEFIT OF, AND SHALL BE PAID TO, THE LANDLORD, OR AS THE LANDLORD DIRECTS. SUCH INTEREST, IF ANY, MAY BE WITHDRAWN BY LANDLORD OR AGENT FROM SUCH ACCOUNT AS IT ACCRUES AS OFTEN AS IS PERMITTED BY THE TERMS OF THE ACCOUNT.

Upon any termination of the tenancy herein created, the Landlord may deduct from the Tenant Security Deposit amounts sufficient to pay: (1) any damages sustained by the Landlord as a result of the Tenant's nonpayment of rent or nonfulfillment of the Initial Term or any renewal periods, including the Tenant's failure to enter into possession; (2) any damages to the Premises for which the Tenant is responsible; (3) any unpaid bills which become a lien against the Premises due to the Tenant's occupancy; (4) any costs of re-renting the Premises after a breach of this lease by the Tenant; (5) any court costs incurred by the Landlord in connection with terminating the tenancy; and (6) any other damages of the Landlord which may then be a permitted use of the Tenant Security Deposit under the laws of this State. No fees may be deducted from the Tenant Security Deposit until the termination of the tenancy. After having deducted the above amounts, the Landlord shall, if the Tenant's address is known to him, refund to the Tenant, within thirty (30) days after the termination of the tenancy and delivery of possession, the balance of the Tenant Security Deposit along with an itemized statement of any deductions. If there is more than one person listed above as Tenant, Agent may, in Agent's discretion, pay said balance to any such person, and the other person(s) agree to hold Agent harmless for such action. If the Tenant's address is unknown to the Landlord, the Landlord may deduct the above amounts and shall then hold the balance of the Tenant Security Deposit for the Tenant's collection for a six-month period beginning upon the termination of the tenancy and delivery of possession by the Tenant. If the Tenant fails to make demand for the balance of the Tenant Security Deposit within the six-month period, the Landlord shall not thereafter be liable to the Tenant for a refund of the Tenant Security Deposit or any part thereof.

If the Landlord removes Agent or Agent resigns, the Tenant agrees that Agent may transfer any Tenant Security Deposit held by Agent hereunder to the Landlord or the Landlord's designee and thereafter notify the Tenant by mail of such transfer and of the transferee's name and address. The Tenant agrees that such action by Agent shall relieve Agent of further liability with respect to the Tenant Security Deposit. If Landlord's interest in the Premises terminates (whether by sale, assignment, death, appointment of receiver or otherwise), Agent shall transfer the Tenant Security Deposit in accordance with the provisions of North Carolina General Statutes § 42-54.

**5. Tenant's Obligations:** Unless otherwise agreed upon, the Tenant shall:
  (a) use the Premises for residential purposes only and in a manner so as not to disturb the other tenants;
  (b) not use the Premises for any unlawful or immoral purposes or occupy them in such a way as to constitute a nuisance;
  (c) keep the Premises, including but not limited to all plumbing fixtures, facilities and appliances, in a clean and safe condition;
  (d) cause no unsafe or unsanitary condition in the common areas and remainder of the Premises used by him;
  (e) comply with any and all obligations imposed upon tenants by applicable building and housing codes;
  (f) dispose of all ashes, rubbish, garbage, and other waste in a clean and safe manner and comply with all applicable ordinances concerning garbage collection, waste and other refuse;
  (g) use in a proper and reasonable manner all electrical, plumbing, sanitary, heating, ventilating, air conditioning, and other facilities and appliances, if any, furnished as a part of the Premises;
  (h) not deliberately or negligently destroy, deface, damage or remove any part of the Premises (including all facilities, appliances and fixtures) or permit any person, known or unknown to the Tenant, to do so;
  (i) pay the costs of all utility services to the Premises which are billed directly to the Tenant and not included as a part of the rentals, including, but not limited to, water, electric, telephone, and gas services;
  (j) conduct himself and require all other persons on the Premises with his consent to conduct themselves in a reasonable manner and so as not to disturb other tenants' peaceful enjoyment of the Premises; and
  (k) not abandon or vacate the Premises during the Initial Term or any renewals or extensions thereof. Tenant shall be deemed to have abandoned or vacated the Premises if Tenant removes substantially all of his possessions from the Premises.
  (l) _No Pets_
     _monthly payments by direct deposit_

**6. Landlord's Obligations:** Unless otherwise agreed upon, the Landlord shall:
  (a) comply with the applicable building and housing codes to the extent required by such building and housing codes;
  (b) make all repairs to the Premises as may be necessary to keep the Premises in a fit and habitable condition; provided, however, in accordance with paragraph 10, the Tenant shall be liable to the Landlord for any repairs necessitated by the Tenant's intentional or negligent misuse of the Premises;

Tenant Initials _____

STANDARD FORM 410-T
© 7/2004

This form produced by: Instanet Formulator 800-336-1027

Case 1:23-cv-00596-WO-JLW   Document 1-1   Filed 07/19/23   Page 3 of 7

(c) keep all common areas, if any, used in conjunction with the Premises in a clean and safe condition; and

(d) promptly repair all facilities and appliances, if any, as may be furnished by the Landlord as part of the Premises, including electrical, plumbing, sanitary, heating, ventilating, and air conditioning systems, provided that the Landlord, except in emergency situations, actually receives notification from the Tenant in writing of the needed repairs.

7. **Smoke Detectors:** Pursuant to North Carolina General Statutes § 42-42 and 42-43, the Landlord shall provide and install operable smoke detectors, either battery-operated or electrical, having an Underwriters' Laboratories, Inc., listing or other equivalent national testing laboratory approval. The Tenant shall notify the Landlord, in writing, of the need for replacement of or repairs to a smoke detector. The Landlord shall replace or repair the smoke detectors within 15 days of receipt of notification if the Landlord is notified of needed replacement or repairs in writing by the Tenant. The Landlord shall ensure that a smoke detector is operable and in good repair at the beginning of the Initial Term of the Tenancy. The Landlord shall place new batteries in any battery-operated smoke detectors at the beginning of the Initial Term of the tenancy; **the Tenant shall replace the batteries as needed during the tenancy.**

8. **Rules and Regulations:** The Tenant, his family, servants, guests and agents shall comply with and abide by all the Landlord's existing rules and regulations and such future reasonable rules and regulations as the Landlord may, at Landlord's discretion, from time to time, adopt governing the use and occupancy of the Premises and any common areas used in connection with them (the "Rules and Regulations"). Landlord reserves the right to make changes to the existing Rules and Regulations and to adopt additional reasonable rules and regulations from time to time; provided however, such changes and additions shall not alter the essential terms of this lease or any substantive rights granted hereunder and shall not become effective until thirty (30) days' written notice thereof shall have been furnished to Tenant. Tenant also agrees to abide by any applicable homeowners' association regulations as they now exist or may be amended. A copy of the existing Rules and Regulations, and any applicable homeowners' association regulations, are attached hereto and the Tenant acknowledges that he has read them. The Rules and Regulations shall be deemed to be a part of this lease giving to the Landlord all the rights and remedies herein provided.

9. **Right of Entry:** Landlord hereby reserves the right to enter the Premises during reasonable hours for the purpose of (1) inspecting the Premises and the Tenant's compliance with the terms of this lease; (2) making such repairs, alterations, improvements or additions thereto as the Landlord may deem appropriate; and (3) showing the Premises to prospective purchasers or tenants. Landlord shall also have the right to display "For Sale" or "For Rent" signs in a reasonable manner upon the Premises.

10. **Damages:** Tenant shall be responsible for and liable to the Landlord for all damage to, defacement of, or removal of property from the Premises whatever the cause, except such damage, defacement or removal caused by ordinary wear and tear, acts of the Landlord, his agent, or of third parties not invitees of the Tenant, and natural forces. Tenant agrees to pay Landlord for the cost of repairing any damage for which Tenant is responsible upon receipt of Landlord's demand therefor, and to pay the Rent during the period the Premises may not be habitable as a result of any such damage.

11. **Pets:** If pets are not allowed, Tenant agrees not to keep or allow anywhere on or about the Property any animals or pets of any kind, including but not limited to, dogs, cats, birds, rodents, reptiles or marine animals. If pets are allowed, Tenant acknowledges that the amount of the Pet Fee is reasonable and agrees that the Landlord shall not be required to refund the Pet Fee in whole or in part. If pets are allowed, Tenant agrees to reimburse Landlord for any primary or secondary damages caused thereby whether the damage is to the Premises or to any common areas used in conjunction with them, and to indemnify Landlord from any liability to third parties which may result from Tenant's keeping of such pet or pets.

The Tenant shall remove any pet previously permitted within __N/A__ hours of written notification from the Landlord that the pet, in the Landlord's sole judgment, creates a nuisance or disturbance or is, in the Landlord's opinion, undesirable. If the pet is caused to be removed pursuant to this paragraph, the Landlord shall not be required to refund the Pet Fee; however, the Tenant shall be entitled to acquire and keep another pet of the type previously authorized.

12. **Alterations:** The Tenant shall not paint, mark, drive nails or screws into, or otherwise deface or alter walls, ceilings, floors, windows, cabinets, woodwork, stone, ironwork or any other part of the Premises or decorate the Premises or make any alterations, additions, or improvements in or to the Premises without the Landlord's prior written consent and then only in a workmanlike manner using materials and contractors approved by the Landlord. All such work shall be done at the Tenant's expense and at such times and in such manner as the Landlord may approve. All alterations, additions, and improvements upon the Premises, made by either the Landlord or Tenant, shall become the property of the Landlord and shall remain upon and become a part of the Premises at the end of the tenancy hereby created.

13. **Occupants:** The Tenant shall not allow or permit the Premises to be occupied or used as a residence by any person other than Tenant and the Permitted Occupants.

14. **Rental Application:** In the event the Tenant has submitted a Rental Application in connection with this lease, Tenant acknowledges that the Landlord has relied upon the Application as an inducement for entering into this Lease and Tenant warrants to Landlord that the facts stated in the Application are true to the best of Tenant's knowledge. If any facts stated in the Rental Application prove to be untrue, the Landlord shall have the right to terminate the tenancy and to collect from Tenant any damages resulting therefrom.

15. **Termination for Military Transfer:** If Tenant is a member of the United States Armed Forces who (i) has received permanent change of station orders to move fifty (50) miles or more from the Premises or (ii) is prematurely or involuntarily discharged or relieved from active duty with the United States Armed Forces, Tenant may terminate this lease by written notice of

Page 3 of 6

Tenant Initials _____

STANDARD FORM 410-T
© 7/2004

This form produced by: Instant Formulator ® 800-336-1027

Case 1:23-cv-00596-WO-JLW    Document 1-1    Filed 07/19/23    Page 4 of 7

termination to Landlord stating the effective date of such termination, which date shall not be less than thirty (30) days after receipt of notice by Landlord, provided such notice is accompanied by a copy of the official orders of such transfer, discharge or release from active duty or a written verification signed by the Tenant's Commanding Officer. The final rent due by Tenant shall be prorated to such date of termination and shall be payable, together with liquidated damages in the amount of: (a) one (1) month's rent for the premises, if less than six (6) months of the term of the lease have elapsed as of the effective date of termination, or (b) the amount of one-half (1/2) of one (1) month's rent, if more than six (6) months but less than nine (9) months of the term of the lease have elapsed as of the effective date of such termination; provided, however, no liquidated damages shall be due unless Tenant has completed less than nine (9) months of the tenancy and Landlord has suffered actual damage due to the loss of the tenancy. Upon Tenant's compliance with all the requirements of this paragraph, Landlord shall release Tenant from all obligations hereunder and this lease shall terminate. The Tenant Security Deposit shall be returned, subject to the provisions of paragraph 4 above.

16. **Tenant's Duties Upon Termination:** Upon any termination of the Tenancy created hereby, whether by the Landlord or the Tenant and whether for breach or otherwise, the Tenant shall: (1) pay all utility bills due for services to the Premises for which he is responsible and have all such utility services discontinued; (2) vacate the Premises removing therefrom all Tenant's personal property of whatever nature; (3) properly sweep and clean the Premises, including plumbing fixtures, refrigerators, stoves and sinks, removing therefrom all rubbish, trash, garbage and refuse; (4) make such repairs and perform such other acts as are necessary to return the Premises, and any appliances or fixtures furnished in connection therewith, in the same condition as when Tenant took possession of the Premises; provided, however, Tenant shall not be responsible for ordinary wear and tear or for repairs required by law or by paragraph 6 above to be performed by Landlord; (5) fasten and lock all doors and windows; (6) return to the Landlord all keys to the Premises; and (7) notify the Landlord of the address to which the balance of the Security Deposit may be returned. If the Tenant fails to sweep out and clean the Premises, appliances and fixtures as herein provided, Tenant shall become liable, without notice or demand, to the Landlord for the actual costs of cleaning (over and above ordinary wear and tear), which may be deducted from the Security Deposit as provided in paragraph 4 above.

17. **Tenant's Default:** In the event the Tenant shall fail to:
    (a) pay the rentals herein reserved as and when they shall become due hereunder; or
    (b) perform any other promise, duty or obligation herein agreed to by him or imposed upon him by law and such failure shall continue for a period of five (5) days from the date the Landlord provides Tenant with written notice of such failure,

then in either of such events and as often as either of them may occur, the Landlord, in addition to all other rights and remedies provided by law, may, at its option and with or without notice to Tenant, either (i) terminate this lease or (ii) terminate the Tenant's right to possession of the Premises without terminating this lease. Regardless of whether Landlord terminates this lease or only terminates the Tenant's right of possession without terminating this lease, Landlord shall be immediately entitled to possession of the Premises and the Tenant shall peacefully surrender possession of the Premises to Landlord immediately upon Landlord's demand. In the event Tenant shall fail or refuse to surrender possession of the Premises, Landlord shall, in compliance with Article 2A of Chapter 42 of the General Statutes of North Carolina, reenter and retake possession of the Premises only through a summary ejectment proceeding. If a summary ejectment proceeding is instituted against Tenant, in addition to any court costs and past-due rent that may be awarded, Tenant shall be responsible for paying Landlord the Summary Ejectment Administrative Fee, the amount of which shall be reasonably related to the additional expense in filing the proceeding. In the event Landlord terminates this lease, all further rights and duties hereunder shall terminate and Landlord shall be entitled to collect from Tenant all accrued but unpaid rents and any damages resulting from the Tenant's breach. In the event Landlord terminates the Tenant's right of possession without terminating this lease, Tenant shall remain liable for the full performance of all the covenants hereof, and Landlord shall use reasonable efforts to re-let the Premises on Tenant's behalf. Any such rentals reserved from such re-letting shall be applied first to the costs of re-letting the Premises and then to the rentals due hereunder. In the event the rentals from such re-letting are insufficient to pay the rentals due hereunder in full, Tenant shall be liable to the Landlord for any deficiency. In the event Landlord institutes a legal action against the Tenant to enforce the lease or to recover any sums due hereunder, Tenant agrees to pay Landlord reasonable attorney's fees in addition to all other damages. No fees may be deducted from the Tenant Security Deposit until the termination of the tenancy.

18. **Landlord's Default; Limitation of Remedies and Damages:** Until the Tenant notifies the Landlord in writing of an alleged default and affords the Landlord a reasonable time within which to cure, no default by the Landlord in the performance of any of the promises or obligations herein agreed to by him or imposed upon him by law shall constitute a material breach of this lease and the Tenant shall have no right to terminate this lease for any such default or suspend his performance hereunder. In no event and regardless of their duration shall any defective condition of or failure to repair, maintain, or provide any area, fixture or facility used in connection with recreation or recreational activities, including but not limited to swimming pools, club houses, and tennis courts, constitute a material breach of this lease and the Tenant shall have no right to terminate this lease or to suspend his performance hereunder. In any legal action instituted by the Tenant against the Landlord, the Tenant's damages shall be limited to the difference, if any, between the rent reserved in this lease and the reasonable rental value of the Premises, taking into account the Landlord's breach or breaches, and in no event, except in the case of the Landlord's willful or wanton negligence, shall the Tenant collect any consequential or secondary damages resulting from the breach or breaches, including but not limited to the following items: damage or destruction of furniture or other personal property of any kind located in or about the Premises, moving expenses, storage expenses, alternative interim housing expenses, and expenses of locating and procuring alternative housing.

Page 4 of 6

Tenant Initials ___

**STANDARD FORM 410-T**
© 7/2004

This form produced by: Ministry Formulator 800-336-1027

Case 1:23-cv-00596-WO-JLW   Document 1-1   Filed 07/19/23   Page 5 of 7

19. **Removal, Storage and Disposition of Tenant's Personal Property:**

(a) Ten days after being placed in lawful possession by execution of a writ of possession, the Landlord may throw away, dispose of, or sell all items of personal property remaining on the Premises. During the 10-day period after being placed in lawful possession by execution of a writ of possession, the Landlord may move for storage purposes, but shall not throw away, dispose of, or sell any items of personal property remaining on the Premises unless otherwise provided for in Chapter 42 of the North Carolina General Statutes. Upon the Tenant's request prior to the expiration of the 10-day period, the Landlord shall release possession of the property to the Tenant during regular business hours or at a time agreed upon. If the Landlord elects to sell the property at public or private sale, the Landlord shall give written notice to the Tenant by first-class mail to the Tenant's last known address at least seven days prior to the day of the sale. The seven-day notice of sale may run concurrently with the 10-day period which allows the Tenant to request possession of the property. The written notice shall state the date, time, and place of the sale, and that any surplus of proceeds from the sale, after payment of unpaid rents, damages, storage fees, and sale costs, shall be disbursed to the Tenant, upon request, within 10 days after the sale, and will thereafter be delivered to the government of the county in which the rental property is located. Upon the Tenant's request prior to the day of sale, the Landlord shall release possession of the property to the Tenant during regular business hours or at a time agreed upon. The Landlord may apply the proceeds of the sale to the unpaid rents, damages, storage fees, and sale costs. Any surplus from the sale shall be disbursed to the Tenant, upon request, within 10 days of the sale and shall thereafter be delivered to the government of the county in which the rental property is located.

(b) If the total value of all property remaining on the Premises at the time of execution of a writ of possession in an action for summary ejectment is less than one hundred dollars ($100.00), then the property shall be deemed abandoned five days after the time of execution, and the Landlord may throw away or dispose of the property. Upon the Tenant's request prior to the expiration of the five-day period, the Landlord shall release possession of the property to the Tenant during regular business hours or at a time agreed upon.

20. **Bankruptcy:** If any bankruptcy or insolvency proceedings are filed by or against the Tenant or if the Tenant makes any assignment for the benefit of creditors, the Landlord may, at his option, immediately terminate this Tenancy, and reenter and repossess the Premises, subject to the provisions of the Bankruptcy Code (11 USC Section 101, et. seq.) and the order of any court having jurisdiction thereunder.

21. **Tenant's Insurance; Release and Indemnity Provisions:** The Tenant shall be solely responsible for insuring any of his personal property located or stored upon the Premises upon the risks of damage, destruction, or loss resulting from theft, fire, storm and all other hazards and casualties. Regardless of whether the Tenant secures such insurance, the Landlord and his agents shall not be liable for any damage to, or destruction or loss of, any of the Tenant's personal property located or stored upon the Premises regardless of the cause or causes of such damage, destruction, or loss, unless such loss or destruction is attributable to the intentional acts or willful or wanton negligence of the Landlord. The Tenant agrees to release and indemnify the Landlord and his agents from and against liability for injury to the person of the Tenant or to any members of his household resulting from any cause whatsoever except only such personal injury caused by the negligent, or intentional acts of the Landlord or his agents.

22. **Agent:** The Landlord and the Tenant acknowledge that the Landlord may, from time to time in his discretion, engage a third party ("the Agent") to manage, supervise and operate the Premises or the complex, if any, of which they are a part. If such an Agent is managing, supervising and operating the Premises at the time this lease is executed, his name will be shown as "Agent" on the first page hereof. With respect to any Agent engaged pursuant to this paragraph, the Landlord and the Tenant hereby agree that: (1) Agent acts for and represents Landlord in this transaction; (2) Agent shall have only such authority as provided in the management contract existing between the Landlord and Agent; (3) Agent may perform without objection from the Tenant, any obligation or exercise any right of the Landlord imposed or given herein or by law and such performance shall be valid and binding, if authorized by the Landlord, as if performed by the Landlord; (4) the Tenant shall pay all rentals to the Agent if directed to do so by the Landlord; (5) except as otherwise provided by law, the Agent shall not be liable to the Tenant for the nonperformance of the obligations or promises of the Landlord contained herein; (6) nothing contained herein shall modify the management contract existing between the Landlord and the Agent; however, the Landlord and the Agent may from time to time modify the management agreement in any manner which they deem appropriate; (7) the Landlord, may, in his discretion and in accordance with any management agreement, remove without replacing or remove and replace any agent engaged to manage, supervise and operate the Premises.

23. **Form:** The Landlord and Tenant hereby acknowledge that their agreement is evidenced by this form contract which may contain some minor inaccuracies when applied to the particular factual setting of the parties. The Landlord and Tenant agree that the courts shall liberally and broadly interpret this lease, ignoring minor inconsistencies and inaccuracies, and that the courts shall apply the lease to determine all disputes between the parties in the manner which most effectuates their intent as expressed herein. The following rules of construction shall apply: (1) handwritten and typed additions or alterations shall control over the preprinted language when there is an inconsistency between them; (2) the lease shall not be strictly construed against either the Landlord or the Tenant; (3) paragraph headings are used only for convenience of reference and shall not be considered as a substantive part of this lease; (4) words in the singular shall include the plural and the masculine shall include the feminine and neuter genders, as appropriate; and (5) the invalidity of one or more provisions of this lease shall not affect the validity of any other provisions hereof and this lease shall be construed and enforced as if such invalid provision(s) were not included.

Page 5 of 6

Tenant Initials _____

**STANDARD FORM 410-T**
© 7/2004

This form produced by: License Formulator® 800-336-1027

24. **Amendment of Laws:** In the event that subsequent to the execution of this lease any state statute regulating or affecting any duty or obligation imposed upon the Landlord pursuant to this lease is enacted, amended, or repealed, the Landlord may, at his option, elect to perform in accordance with such statute, amendment, or act of repeal in lieu of complying with the analogous provision of this lease.

25. **Eminent Domain and Casualties:** The Landlord shall have the option to terminate this lease if the Premises, or any part thereof, are condemned or sold in lieu of condemnation or damaged by fire or other casualty.

26. **Assignment:** The Tenant shall not assign this lease or sublet the Premises in whole or part.

27. **Waiver:** No waiver of any breach of any obligation or promise contained herein shall be regarded as a waiver of any future breach of the same or any other obligation or promise.

28. **Other Terms and Conditions:**
   (a) ☐ (Check if applicable) The Premises were built prior to 1978. (Attach Standard Form # 430 - T, "Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards.")
   (b) If there is an Agent involved in this transaction, Agent hereby discloses to Tenant that Agent is acting for and represents Landlord.
   (c) The following additional terms and conditions shall also be a part of this lease:
   _ADDENDUMS : Rental Insurance_
   _Eviction Filing Cost_

   (d) Itemize all addenda to this Contract and attach hereto: _NA_

29. **Inspection of Premises:** Within _NA_ days of occupying the Premises, Tenant has the right to inspect the Premises and complete a Move-in Inspection Form.

30. **Notice:** Any notices required or authorized to be given hereunder or pursuant to applicable law shall be mailed or hand delivered to the following addresses:
   Tenant: the address of the Premises
   Landlord: the address to which rental payments are sent.

31. **Execution; Counterparts:** When Tenant signs this lease, he acknowledges he has read and agrees to the provisions of this lease. This lease is executed in _2_ (number) counterparts with an executed counterpart being retained by each party.

32. **Entire Agreement:** This Agreement contains the entire agreement of the parties and there are no representations, inducements or other provisions other than those expressed in writing. All changes, additions or deletions hereto must be in writing and signed by all parties.

THE NORTH CAROLINA ASSOCIATION OF REALTORS®, INC. MAKES NO REPRESENTATION AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION.

_[signature]_ (SEAL)

LANDLORD: _[signature]_ (SEAL)
_Cynthia [signature]_ (SEAL)

Date: 11/23/2019

By: _NA_ , AGENT
_NA_ (SEAL)
Date: 11/23/2019

STANDARD FORM 410-T
Copyright © 2004

This form produced by: Formulator® 800-336-1027

Case 1:23-cv-00596-WO-JLW   Document 1-1   Filed 07/19/23   Page 7 of 7